**RECORD NOS. 14-1622(L); 14-1727**

In The

# United States Court of Appeals

### For The Fourth Circuit

## ROSE LORENZO,

*Plaintiff – Appellee*,

**v.**

## PRIME COMMUNICATIONS, L.P.,
## a Texas General Partnership,

*Defendant – Appellant*.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
AT RALEIGH**

———————

**BRIEF OF APPELLANT**

———————

William W. Pollock
John B. Walker
RAGSDALE LIGGETT, PLLC
CrossPointe Plaza
2840 Plaza Place, Suite 400
Raleigh, North Carolina  27612
(919)787-5200

*Counsel for Appellant*

THE LEX GROUP ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA  23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _14-1622_         Caption: _Rose Lorenzo v. Prime Communications, L.P._

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Prime Communications, L.P._
(name of party/amicus)

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.     Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.     Does party/amicus have any parent corporations?                                 ☐ YES ☑ NO
       If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                              ☐ YES ☑ NO
       If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
   If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
   If yes, identify any trustee and the members of any creditors' committee:

Signature: _____     Date: 7/3/14

Counsel for: Prime Communications L.P.

## CERTIFICATE OF SERVICE
**************************

I certify that on ____July 3, 2014____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Stephen A. Dunn
(sdunn@emanuelanddunn.com)
Emanuel & Dunn, PLLC
P.O. Box 426
Raleigh, NC 27602

Harris D. Butler, III
(harris.butler@butlerroyals.com)
Zev Antell
(zev.antell@butlerroyals.com)
Butler Royals PLC
100 Shockoe Slip, 4th Floor
Richmond, VA 23219

_____
(signature)

7/3/14
(date)

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................ iii

STATEMENT OF JURISDICTION ............................................................. 1

STATEMENT OF THE ISSUES ................................................................. 2

STATEMENT OF THE CASE .................................................................... 2

    I.    PROCEDURAL HISTORY ............................................................ 2

    II.   FACTUAL BACKGROUND .......................................................... 4

        A.   Prime's Employment and Dispute Resolution Policies ............. 4

        B.   Lorenzo's Employment With Prime ......................................... 9

        C.   Lorenzo Brings This Action And The District Court Certifies A State-Wide Class And Rejects Prime's Request For Arbitration ............................................................ 9

SUMMARY OF THE ARGUMENT ......................................................... 13

ARGUMENT ........................................................................................... 17

    I.    STANDARD OF REVIEW ........................................................... 17

    II.   THE DISTRICT COURT ERRED BY REFUSING TO ENFORCE LORENZO'S AGREEMENT TO ARBITRATE HER CLAIMS. ............................................................................ 18

        A.   Lorenzo and Prime Entered Into A Valid Arbitration Agreement .............................................................................. 20

        B.   Lorenzo's and the Class Members' Claims Are Within the Scope of Their Arbitration Agreements ........................... 25

i

III.    THE DISTRICT COURT'S CERTIFICATION OF A RULE 23 CLASS WAS LEGALLY FLAWED ...................................................28

    A.    Lorenzo's Claims Are Not Typical Of The Class Nor Do They Present Common Questions Of Law Or Fact .................30

    B.    The District Court's Commonality Analysis Failed To Address The Disputed Legality Of Prime's Chargeback Policy...........................................................................................34

    C.    The District Court's Predominance Analysis Was Legally Flawed ...................................................................................41

CONCLUSION ................................................................................44

REQUEST FOR ORAL ARGUMENT ................................................44

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adkins v. Labor Ready, Inc.*,
    303 F.3d 496 (4th Cir. 2002) ...........................................................19, 20, 27

*Allied-Bruce Terminix Companies, Inc. v. Dobson*,
    513 U.S. 265 (1995)....................................................................................19

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)................................................................................ 29-30

*Am. Express Co. v. Italian Colors Rest.*,
    570 U.S. ---, 133 S. Ct. 2304 (2013) ......................................................19, 27

*Am. Gen. Life & Accident Inc. Co. v. Wood*,
    429 F.3d 83 (4th Cir. 2005) ...................................................................19, 20

*Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*,
    96 F.3d 88 (4th Cir. 1996) ...........................................................................26

*AT&T Mobility LLC v. Concepcion*,
    --- U.S. ---, 131 S. Ct. 1740 (2011) ......................................................20, 27

*Behrens v. Pelletier*,
    516 U.S. 299 (1996)........................................................................................1

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
    155 F.3d 331 (4th Cir. 1998) .......................................................................32

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006)......................................................................................22

*Califano v. Yamasaki*,
    442 U.S. 682 (1979)......................................................................................28

*Circuit City Stores*, *Inc. v. Adams*,
    532 U.S. 105 (2001).................................................................19

*Comcast Corp. v. Behrend*,
    569 U.S. ---, 133 S. Ct. 1426 (2013) ......................................*passim*

*Compucredit Credit Corp. v. Greenwood*,
    --- U.S. ---, 132 S. Ct. 665 (2012) .............................................27

*Crosby v. City of Gastonia*,
    2008 WL 1944399 (W.D.N.C. 2008),
    682 F. Supp. 2d 537 (W.D.N.C. 2008) *aff'd*,
    635 F.3d 634 (4th Cir. 2011) ...............................................33, 34

*Daisy Mfg. Co. v. NCR Corp.*,
    29 F.3d 389 (8th Cir. 1994) .......................................................26

*Deleon v. Verizon Wireless*, *LLP*,
    207 Cal. App. 4th 800, 143 Cal. Rptr. 3d 810 (2012) ............................36, 37

*Dockser v. Schwartzberg*,
    433 F.3d 421 (4th Cir. 2006) .....................................................28

*EQT Prod. Co. v. Adair*,
    2014 WL 4070457 (4th Cir. Aug. 19, 2014) ..............................18, 29, 41, 43

*FindWhere Holdings*, *Inc. v. Sys. Env't Optimization*, *LLC*,
    626 F.3d 752 (4th Cir. 2010) .....................................................17

*Gregory v. Finova Capital Corp.*,
    442 F.3d 188 (4th Cir. 2006) .....................................................17

*Gen. Tel. Co. v. Falcon*,
    457 U.S. 147 (1982)..............................................................30

*Grandalski v. Quest Diagnostics*, *Inc.*,
    2014 WL 4455034 (4th Cir. Sep. 11, 2014) ........................................32

*Gregory v. Finova Capital Corp.*,
    442 F.3d 188 (4th Cir. 2006) .....................................................17

*Gunnells v. Healthplan Servs.*, *Inc.*,
    348 F.3d 417 (4th Cir. 2003) .....................................................29

iv

*Hightower v. GMRI, Inc.*,
  272 F.3d 239 (4th Cir. 2001) .........................................................................24

*Howard v. Oakwood Homes Corp.*,
  134 N.C. App. 116, 516 S.E.2d 882 (1999) .................................................24

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
  571 F.3d 953 (9th Cir. 2009) .......................................................................43

*Johnson v. Circuit City Stores*,
  148 F.3d 373 (4th Cir. 1998) ..................................................................24, 25

*Johnson v. Travelers Property Cas. Corp.*,
  56 F. Supp. 2d 1025 (N.D. Ill. 1999)............................................................23

*Koehl v. Verio, Inc.*,
  142 Cal. App. 4th 1313, 48 Cal. Rptr. 3d 749 (2006) .............................38, 39

*Lienhart v. Dryvit Systems, Inc.*,
  255 F.3d 138 (4th Cir. 2001) ..................................................................18, 32

*Martin v. Vance*,
  133 N.C. App. 116, 514 S.E.2d 306 (1999) .....................................21, 23, 24

*MCI Telecommunications Corp. v. Wanzer*,
  897 F.2d 703 (4th Cir. 1990) .......................................................................23

*Morangelli v. Chemed Corp.*,
  922 F. Supp. 2d 278 (E.D.N.Y. 2013) ..........................................................38

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983).......................................................................20, 25, 26, 28

*Moye v. Duke University Health System, Inc.*,
  2007 WL 1652542 (M.D.N.C. 2007) .....................................................21, 23

*Nitro-Lift Techs., L.L.C. v. Howard*,
  568 U.S. ---, 133 S. Ct. 500 (2012) .............................................................22

*Oblix, Inc. v. Winecki*,
  374 F.3d 488 (7th Cir. 2004) .......................................................................1

*O'Neil v. Hilton Head Hosp.*,
  115 F.3d 272 (4th Cir. 1997) ......................................................................24

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999)....................................................................................29

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
  388 U.S. 395 (1967).....................................................................................22

*Rota-McLarty v. Santander Consumer USA, Inc.*,
  700 F.3d 690 (4th Cir. 2012) ......................................................................17

*Scott v. Family Dollar Stores, Inc.*,
  733 F.3d 105 (4th Cir. 2013) .......................................................................43

*Shelton v. Pargo, Inc.*,
  582 F.2d 1298 (4th Cir. 1978) .....................................................................35

*Southland Corp. v. Keating*,
  465 U.S. 1 (1984)........................................................................................20

*Sprague v. Gen. Motors Corp.*,
  133 F.3d 388 (6th Cir. 1998) .......................................................................32

*Steinhebel v. Los Angeles Times Communications, LLC*,
  126 Cal. App. 4th 696, 24 Cal. Rptr. 3d 351 (2005) *cert. denied*,
  524 U.S. 923 (1998).....................................................................................38

*Sutherland v. Ernst & Young, LLP*,
  726 F.3d 290 (2d Cir. 2013) ........................................................................27

*Thorne v. Jefferson-Pilot Life Inc. Co.*,
  445 F.3d 311 (4th Cir. 2006) .......................................................................18

*Walker v. Westinghouse Elec. Corp.*,
  77 N.C. App. 253, 335 S.E.2d 79 (1985) .......................................23

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. ---, 131 S. Ct. 254 (2011) ...............................29, 32, 35

## **STATUTES**

9 U.S.C. § 2 ...................................................................20, 27

9 U.S.C. § 3 ...................................................................11, 20

9 U.S.C. § 16(a) .....................................................................1

9 U.S.C. § 16(a)(1) .................................................................1

28 U.S.C. § 1292(e) .................................................................1

28 U.S.C. § 1331 ....................................................................1

28 U.S.C. § 1367(a) .................................................................1

29 U.S.C. § 201 *et seq.* ............................................................1

29 U.S.C. § 216 ....................................................................10

29 U.S.C. § 216(b) ..................................................................2

N.C. Gen. Stat. § 95-25 ............................................................10

N.C. Gen. Stat. § 95-25.1 *et seq.* ..................................................1

N.C. Gen. Stat. § 95-25.6 .......................................................39, 40

N.C. Gen. Stat. § 95-25.8 .......................................................39, 40

N.C. Gen. Stat. § 95-25.13 .........................................................39

## **RULES**

Fed. R. Civ. P. 23 ...........................................................................*passim*

Fed. R. Civ. P. 23(a)..................................................................................29

Fed. R. Civ. P. 23(a)(2) .......................................................................16, 41

Fed. R. Civ. P. 23(b) ..................................................................................29

Fed. R. Civ. P. 23(b)(3)...............................................................*passim*

Fed. R. Civ. P. 23(f) ............................................................................1, 3, 13

## STATEMENT OF JURISDICTION

Plaintiff Rose Lorenzo's complaint alleges violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*., and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.1 *et seq*.  Accordingly, the district court had jurisdiction under 28 U.S.C. §§ 1331 and 1367(a).

Under Fed. R. Civ. P. 23(f), an appellate court has the discretion to review an order certifying a class.  Defendant Prime Communications, L.P. ("Prime") timely petitioned this Court on April 10, 2014 for leave to appeal from the district court's order of March 24, 2014 granting class certification of Lorenzo's state wage and hour claims.  (JA 719)  On June 24, 2014, this Court granted the petition for leave to appeal in Docket No. 14-1622.  (COA Doc 17)  Accordingly, this Court has jurisdiction over this appeal under Federal Rule of Civil Procedure 23(f) and 28 U.S.C. § 1292(e).

In Docket No. 14-1727, Prime timely filed a notice of appeal on July 18, 2014 from the order of the district court entered on July 9, 2014 denying Prime's motion for reconsideration of its motion to compel arbitration.  (JA 787)  This Court has jurisdiction over that appeal under 9 U.S.C. § 16(a)(1).[1]

---

[1]  An appeal of a motion for reconsideration of an order refusing to send a matter to arbitration "is no less appealable under [9 U.S.C.] § 16(a) than the [initial] order" refusing to compel arbitration.  *Oblix*, *Inc. v. Winecki*, 374 F.3d 488, 490 (7th Cir. 2004) (citing *Behrens v. Pelletier*, 516 U.S. 299 (1996)).  Therefore, there is no merit to any contention by Lorenzo that Prime's appeal is untimely because it was not taken from the original order denying arbitration.

## STATEMENT OF ISSUES

1.      Whether the district court erred in refusing to compel arbitration of Lorenzo's claims when Lorenzo expressly agreed to arbitrate all claims related to her employment with Prime.

2.      Whether the district court erred in granting class certification of Lorenzo's state wage and hour claims.

## STATEMENT OF THE CASE

## I.      PROCEDURAL HISTORY

Plaintiff Rose Lorenzo sued Prime on February 17, 2012 alleging violations of the FLSA and the NCWHA and a breach of Lorenzo's employment agreement with Prime.  (JA 22)  Prime filed its answer denying the allegations of the Complaint. (JA 39) Among the defenses raised by Prime was an agreement by Lorenzo to arbitrate any claims related to her employment with Prime.  (JA 39) Lorenzo subsequently filed an Amended Complaint seeking to have the FLSA claims treated as a collective action pursuant to 29 U.S.C. § 216(b) and to have the state wage claims certified as a class action under Rule 23 of the Federal Rules of Civil Procedure.  (JA 49)

On June 19, 2013, Prime moved to compel arbitration of Lorenzo's claims based on Lorenzo's agreement, as a condition of her employment, to Prime's dispute resolution program, which requires both Lorenzo and Prime to arbitrate all

claims related to Lorenzo's employment with Prime. (JA 365) On November 20, 2013, the district court denied Prime's motion to compel arbitration, holding that Prime had not provided sufficient evidence that Lorenzo had agreed to this arbitration provision. (JA 549)

Prime subsequently located Lorenzo's signed acknowledgement regarding the arbitration provision and, on January 30, 2014, filed a motion for reconsideration of the denial of its motion to compel arbitration. (JA 662) By order dated July 9, 2014, the district court denied Prime's motion for reconsideration. (JA 784) Prime timely filed a notice of appeal from that order on July 18, 2014. (JA 787)

Separately, on June 14, 2013, after class certification-related discovery, Lorenzo filed a motion to certify the class under Rule 23. (JA 225) The district court granted Lorenzo's motion for class certification on March 24, 2014. (JA 707) Prime timely petitioned this Court for leave to appeal that order under Fed. R. Civ. P. 23(f), (JA 719) and this Court granted the petition on June 24, 2014. (COA Doc 17) This Court subsequently consolidated the two appeals on July 25, 2014. (COA Doc 23)

## II.     FACTUAL BACKGROUND

### A.     Prime's Employment And Dispute Resolution Policies.

Prime is an authorized retailer of AT&T wireless communications devices and services, and at all relevant times, operated 230 retail stores and kiosks in 12 states.  (JA 49)  Lorenzo initially was employed by Prime as a sales associate, also referred to as a "[S]olutions [S]pecialist." (JA 50)   Under Prime's hierarchy of employment, a Solution Specialist is an entry-level position. (JA 197) A Solution Specialist is assigned to a particular store and is expected to, among other things, sell merchandise and cellular service plans.  (JA 197)  Solution Specialists earn an hourly wage that is paid twice per month (including any applicable overtime).  (JA 50)

In addition, Solution Specialists receive commissions based upon the gross profit for their own individual sales, which are derived from payments made to Prime by AT&T for the sale of AT&T products and service plans for cell phones. (JA 305)  Commissions are determined on an individual basis and are dependent on a number of factors, so that Solution Specialists who work in low-volume areas are not expected to meet the same goals as employees in larger volume markets. (*Id.* and JA 354-56)  Commissions are paid monthly by a separate check, and are not commingled with an employee's hourly wages.  (JA 424)

In Prime's work force, Store Managers supervise the Solution Specialists and are responsible for the general operations, appearance and productivity of a particular location. (JA 132-135 and 147-49)  Before July 2012, Store Managers were paid a salary; since then, they have been paid on an hourly basis. (JA 199-200)  Store Managers also are eligible for a bonus based upon the overall gross profit of their particular location, which would include sales made by the Solution Specialists that they supervise. (JA 388-89)  Similar to the payment of commissions, Store Managers receive any applicable bonus payment once a month, in a check separate from their earned wages. (JA 433-34)

Prime makes clear to its employees that any commissions and bonuses that the employees may be eligible to receive are subject to the conditions under which AT&T calculates and pays commissions to Prime (as an authorized retailer). (JA 412, 424, 446-49, and 674)  Under Prime's agreement with AT&T, Prime does not "earn" its commissions from AT&T until a 180-day vesting period has passed; in other words, AT&T does not ultimately compensate Prime for handset and feature activations by customers who do not remain with AT&T for at least 180 days. (JA 305, 412, and 674)  Rather than delaying the payment of commissions to Prime for approximately 6 months, however, AT&T advances these commissions to Prime in the month after the initial sale, subject to any refunds that AT&T must apply during the 180-day period. (JA 305 and 456)  Similarly, so that its personnel do

not have to wait 180 days to receive commissions and bonuses, Prime advances these payments to its employees when AT&T pays Prime. (JA 305 and 456) These advances are subject to the same 180-day refund period that applies to the commissions that AT&T pays to Prime. (JA 424) This approach is similar to how most, if not all, other global cellular carriers operate. (JA 450)

Employees are expressly and repeatedly made aware of these potential deductions (also known as "chargebacks") prior to and during employment. (JA 424 and 675) Prior to employment, all newly hired Prime employees must review and sign a Wage Deduction Authorization Agreement that sets out the conditions under which refunds are taken, including a specific provision that "sales are subject to a 180-day deactivation deduction from my pay when the Company is informed of same." (JA 412) In addition, Prime periodically sends documents entitled "Sales Compensation/Bonus Plan" to its Store Managers that set forth the criteria and payout for the bonus structure of a given month. (JA 446) Each Bonus Plan reminds Store Managers that "Gross Profit calculated is net of costs and chargebacks with factored discounts and features," and "[b]onus deductions include but are not limited to: unsupported inventory shrinkages and missing deposits." (JA 446) Similar plans were disbursed to each store to provide the commission structure and incentive plans in place for the month for Solution Specialists. Additionally, Prime's Employee Handbook clearly and unequivocally

6

states "[a]ll Commissions are subject to Carrier and Company chargebacks.  Please refer to the Chargeback Policy found on ADP self-serve website under the Payday tab."  (JA 424)  Prime also explains that all bonuses to Store Managers are discretionary.  (JA 433)

Prime's Employee Handbook also contains a dispute resolution provision. (JA 437-438)  This provision states that all employment disputes that are not resolved informally may be mediated; if mediation is not successful, any further resolution must be pursued in arbitration and that "[t]he results of the arbitration will be final and binding upon all parties."  (JA 437)  The handbook further provides that the employee agrees to arbitrate all disputes arising from his or her employment:

> In the event that you are not satisfied with the results of [a] Mediation, then you may appeal the matter to the Arbitration in accordance with the Dispute/Conflict Resolution Program.  The results of the Arbitration will be final and binding upon all parties.

> Employee understands that if he/she chooses to accept employment or to continue employment with Prime Communications after the set date forth below [sic], Employee agrees to all provisions of the Dispute/Conflict Regulations Program.

> **This includes the requirements under this program that any legal dispute <u>the Employee has against Prime Communications have waived all rights to bring a lawsuit</u> and to a jury trial regarding any dispute, including, but not limited to, claims for pay or benefits arising under the Fair Labor Standards Act, Texas Pay Day Law Act or other similar state statute, . . . or any other claims, whether specifically employment-related or otherwise, arising from contract, tort or statu[t]e which Employee might**

**have arising from my employment with and separation from the Company.**

(JA 437-438) (formatting in original)

The details of the arbitration are set forth in the Dispute/Conflicts Resolution Program identified in the Employee Handbook. (JA 474) This document recognizes that both Prime and its employees have agreed to settle all claims through this program and that they have "waived their rights to bring a lawsuit against each other" (JA 474) and then sets forth specific procedures on how the arbitration is to be conducted. (JA 477-78)

The program states that the Company and its employees "have mutually consented to the resolution by arbitration of all claims or controversies . . . arising out of . . . employment." (JA 474) It is "contractual in nature and enforceable by either party" and entered into for "full and adequate consideration." (JA 479) Further, the dispute program provides that "class actions and any other form of collective action are prohibited, and Employee waives his or her rights to bring such actions against the Company." (JA 476)

As a matter of Prime's routine custom and practice, each employee of Prime is required to sign a separate acknowledgement of the Employee Handbook in which they "acknowledge, understood, accept, and agree to comply with the information contained in the Employee Handbook." (JA 368-369 and 673)

8

### B.     Lorenzo's Employment With Prime.

Lorenzo was employed by Prime from October 20, 2009 to June 17, 2011. (JA 51 and 260)  She initially served as a solution specialist at Prime's Fuquay-Varina, North Carolina location.  (JA 50)  In February of 2010, Lorenzo was promoted to store manager of the Middle Creek Commons store, located in Raleigh, North Carolina.  (JA 51)  As store manager, Lorenzo received a salary, plus a bonus based on the gross profit of the entire store.  (JA 122)

Prior to her employment, Lorenzo was informed of Prime's policy requiring the refund of unearned commissions, as evidenced by her signature on the wage deduction authorization.  (JA 412)  Prior to or contemporaneously with the start of her employment, Lorenzo received an Employment Handbook that contained a dispute resolution provision (entitled "Conflict/Dispute Resolution") that required arbitration of disputes.  (JA 437-38)  Lorenzo specifically signed an acknowledgment form for the Employee Handbook that stated she "acknowledge[d], understood, accept[ed] and agree[d] to comply with the information contained in the Employee Handbook."  (JA 673)  Lorenzo resigned as a store manager on June 17, 2011.  (JA 51)

### C.     Lorenzo Brings This Action And The District Court Certifies A State-Wide Class And Rejects Prime's Request For Arbitration.

In the original complaint filed on February 21, 2012, Lorenzo alleges that gross profits and earned commissions were "wrongfully withheld and diverted

from" her (JA 27), and that Prime's policies and practices with respect to commissions were "misleading and fraudulent," and violated the FLSA and NCWHA. (JA 27) The complaint alleged that Prime diverted commissions that Lorenzo had earned, and that failure to pay these commissions violated the NCWHA, N.C. Gen. Stat. § 95.25.[2] The original Complaint did not seek class certification. (JA 22)

On May 4, 2012, Lorenzo filed an amended complaint in which she sought recovery for herself and others similarly situated for the same alleged violations of the FLSA and NCWHA. (JA 49) Lorenzo sought certification of the following class under Rule 23(b)(3) of the Federal Rules of Civil Procedure:

> All employees of Prime Communications LP employed in North Carolina who were promised or paid commission compensation based upon sales of wireless products, services and accessories from any store owned or operated by Prime Communications LP.

(JA 59)

---

[2] The complaint also alleged that Prime breached Lorenzo's employment contract by not paying her a bonus and that Prime violated the FLSA by purportedly failing to pay Lorenzo overtime wages. The FLSA claims were certified by the district court as a collective action under 29 U.S.C. § 216. (JA 707) While the FLSA collective action determination is not a direct subject of this appeal, the necessary consequence of an order reversing the district court's denial of arbitration would be to require vacating the order granting conditional certification of the FLSA collective action, given Lorenzo's agreement to resolve her disputes by arbitration on an individual basis rather than by class or collective actions.

Prime invoked arbitration as an affirmative defense when it answered both the original and amended complaints.  (JA 39 and 71)  Thereafter, on June 19, 2013, Prime filed a motion under Section 3 of the FAA, 9 U.S.C. § 3, to compel arbitration and stay the litigation.  (JA 365)  This motion was referred to a magistrate judge, who, on October 29, 2013, recommended that the motion be denied solely because, in the magistrate's view, there was "simply no evidence before the court that Lorenzo agreed to the arbitration provision."  (JA 546)  The district court adopted the recommendation on November 20, 2013, denying arbitration because "defendant has been unable to produce any signed acknowledgement form signed by plaintiff.  (JA 550)

A number of Lorenzo's personnel files, including her signed acknowledgment page, had been misplaced during Prime's conversion from paper employee records to a paperless system.  (JA 676-80)  Prime was able to find Lorenzo's signed acknowledgment page only after the district court had ruled on the initial motion to compel arbitration. (JA 677-679)  Accordingly, on January 30, 2014, Prime filed a motion for reconsideration of the district court's order and submitted Lorenzo's signed acknowledgement in support of that motion.  (JA 662)

On March 31, 2014, the magistrate judge considered Prime's additional evidence, including Lorenzo's signed authorization, but nonetheless recommended that Prime's motion for reconsideration be denied. (JA 712)  This time, the

magistrate recommended denying arbitration on a different basis, determining that Prime's Employee Handbook was not a binding employment contract and therefore Prime could not enforce the arbitration provision contained therein.  (JA 717)  The district court adopted the magistrate's recommendation and entered an order denying Prime's motion for reconsideration on July 9, 2014.  (JA 784)  Prime timely appealed from the district court's order on July 18, 2014.  (JA 787)

In the meantime, Lorenzo's first motion for conditional certification of a collective action under the FLSA had been denied without prejudice on April 3, 2013.  (JA 156)  After discovery proceeded on the issue of class certification, on June 14, 2013, Lorenzo filed a second motion for conditional certification of a collective action under the FLSA (JA 164) and a motion under Rule 23 requesting certification of the following class for the state wage and hour claims:

> All natural persons employed by Prime Communications, L.P. in retail stores and kiosks in the State of North Carolina from February 17, 2006, to present who were paid commissions or bonuses based on sales.

(JA 225)  Lorenzo submitted an affidavit in support of the Rule 23 motion in which she alleged that four specific transactions of hers were improperly deducted.  (JA 260)  Lorenzo submitted no evidence explaining how these alleged errors in her specific transactions could extend to the class as a whole.

The motion for class certification was similarly referred to a magistrate judge for determination, and on January 15, 2014, the magistrate recommended

certifying a Rule 23 class on Lorenzo's state law claims.  (JA 552)   In the magistrate's view, common questions of law concerning Prime's policies and practices predominated over individual issues. (JA 552-63)

Prime objected to this recommendation on January 31, 2014, citing to new evidence that would disqualify Lorenzo as a suitable class representative and explaining that employee commissions were highly individualized in nature.  (Doc 81) On March 24, 2014, the district court adopted the recommendation of the magistrate judge as its own order and certified a class, but without clearly articulating the class definition.  (JA 707)  Prime petitioned for leave to appeal under Rule 23(f) (JA 719), and this Court subsequently granted permission to appeal.  (COA Doc. 17)

## SUMMARY OF THE ARGUMENT

When she began her employment with Prime, Lorenzo agreed to arbitrate all disputes relating to her employment by affirmatively assenting to the provisions of Prime's Employee Handbook, which includes a dispute resolution provision requiring arbitration.  In concluding otherwise, the district court fundamentally erred by inquiring whether the Employee Handbook as a whole, rather than the arbitration provision itself, was a binding contract.

It is well established under the FAA that an arbitration provision is severable from the remainder of a contract.  The district court failed in this case to examine

the validity of the arbitration agreement itself and instead concluded that Lorenzo had not agreed to arbitrate because Prime's Employee Handbook as a whole was not a formal employment contract. The district court's holding violated not only longstanding Supreme Court precedent, but also ignored the weight of authority concluding that arbitration provisions contained in employee handbooks are fully valid and enforceable, whether or not the employee handbook itself is a binding contract.

Had the district court engaged in the proper inquiry, it would have concluded that the arbitration provision at issue here is a valid agreement, supported by adequate consideration. Prime and Lorenzo mutually agreed to arbitrate all disputes related to Lorenzo's employment. As this Court has repeatedly explained, no additional consideration beyond a mutual promise to arbitrate is needed to create a valid arbitration agreement.

Although the district court did not reach the issue, it is clear that the other prerequisite for enforcing Lorenzo's arbitration agreement—that the dispute falls within the scope of the arbitration provision—is easily met here. The arbitration provision is written in broad language covering all employment-related disputes, and it also expressly includes within its scope claims—like the ones Lorenzo brings here—for alleged violations of FLSA or state wage and hour statutes.

The district court's order granting class certification also must be reversed. As the Supreme Court has emphasized, class actions under Rule 23 are the exception, not the norm, and for that reason, the Supreme Court and this Court have further explained that district courts must rigorously analyze whether a plaintiff has satisfied the strict requirements of Rule 23 before certifying a class. The district court failed to meet this obligation on almost every level.

To begin with, Lorenzo's complaints are not typical of the class, nor do they raise common issues of law or fact. If the district court had scrutinized Lorenzo's claims closely, it would have been clear that her grievance is not with Prime's chargeback policy in general, but rather about the application of that policy to her specific circumstances. Determining whether the application of the policy was proper requires an individualized, transaction-by-transaction assessment, something that is plainly incompatible with class-wide resolution because individual issues would overwhelm common ones and a class-wide trial would be unmanageable.

Moreover, the district court's conclusion that the validity of the policy is itself a common question is insufficient to support certification. The Supreme Court has made clear that not every purportedly common question of law will suffice; on the contrary, the class proceeding must be capable of generating common answers that will resolve the case in one stroke. That is impossible here,

given that the resolution of Lorenzo's claims will require a highly individualized employee-by-employee and transaction-by-transaction analysis.

The district court also erred by uncritically accepting Lorenzo's unsupported assertions that Prime's chargeback policy could be categorically unlawful. This Court has long held that a class certification decision requires at least a preliminary exploration of the merits, especially when the disputed merits issues are relevant to the class certification inquiry. If the district court had even scratched the surface of Lorenzo's claims, it would have realized that they lack any legal basis. Courts examining policies similar to Prime's have held they were proper deductions from advanced commissions, and accordingly such policies are permissible under the FLSA and state wage and hour laws.

Finally, because Lorenzo failed to raise common questions of law or fact sufficient to satisfy Rule 23(a)(2), she also necessarily failed to satisfy Rule 23(b)(3)'s more demanding requirement that such questions predominate over individualized ones. Even assuming that Lorenzo raised some common questions, the district court's predominance analysis was independently erroneous. In violation of the well-established principle that only actual deprivations of wages can violate the law, the district court based its certification solely on the existence of a company-wide chargeback policy, without considering the manner in which that policy was applied to each class member and whether any class member had

any commissions improperly deducted.  These inquiries necessary to assess both liability and damages are highly individualized in nature.  Indeed, Lorenzo's inability to propose a reliable methodology for determining damages on a class-wide basis is fatal to class certification, because, as the Supreme Court recently explained, questions of individual damages calculations will inevitably overwhelm any abstract questions common to the class.  Rule 23(b)(3)'s fundamental purpose is to separate cases where a class trial will save resources from those that would instead devolve into an unmanageable series of mini-trials.  Because of the numerous differences among the class members and the need to individually assess potential damages for each class member, this case squarely falls into the latter category.

## ARGUMENT

### I.    STANDARD OF REVIEW

A *de novo* standard of review applies to an appeal of any decision on whether a matter should be compelled to arbitration.  *Rota-McLarty v. Santander Consumer USA*, *Inc.*, 700 F.3d 690, 699 (4th Cir. 2012); *FindWhere Holdings*, *Inc. v. Sys. Env't Optimization*, *LLC*, 626 F.3d 752, 755 (4th Cir. 2010).

A district court's decision to certify a class is reviewed for abuse of discretion, "but that discretion must be exercised within the framework of Rule 23."  *Gregory v. Finova Capital Corp.*, 442 F.3d 188, 190 (4th Cir. 2006).  In other

words, "[a] district court abuses its discretion when it materially misapplies the requirements of Rule 23." *EQT Prod. Co. v. Adair*, 2014 WL 4070457, at *5 (4th Cir., Aug. 19, 2014). Moreover, a district court by definition abuses its discretion when it makes an error of law in certifying a class. *Thorne v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 317 (4th Cir. 2006); *Lienhart v. Dryvit Systems*, *Inc.*, 255 F.3d 138, 146 (4th Cir. 2001).

## II. THE DISTRICT COURT ERRED BY REFUSING TO ENFORCE LORENZO'S AGREEMENT TO ARBITRATE HER CLAIMS

As a condition of her employment, Lorenzo signed and executed an acknowledgment page expressly assenting to all provisions of Prime's Employee Handbook. (JA 673) Those handbook provisions include a requirement that the parties arbitrate virtually all employment-related disputes. (JA 437-38) Despite this clear and uncontradicted evidence of an agreement to arbitrate, the district court concluded that Lorenzo had not agreed to arbitrate because the Employee Handbook was not itself a formal contract of employment. That was error, and the district court's denial of arbitration must be reversed.

A district court must compel arbitration under the Federal Arbitration Act when the proponent of arbitration establishes: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure,

neglect or refusal of the [non-moving party] to arbitrate the dispute." *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) (citations omitted).

All of these factors were met here. To begin with, there can be no dispute that the existence of this lawsuit readily satisfies the first and fourth factors. Moreover, Lorenzo did not dispute below that the agreement concerns a transaction involving interstate commerce, that the FAA applies, and therefore that the third factor is satisfied as well. *See* Dkt. No. 85, at 4. Nor could she, as the Supreme Court has held that the FAA governs all contracts that are within the reach of the Commerce Clause of the U.S. Constitution, *i.e.*, all contracts that are within the power of Congress to regulate. *Allied-Bruce Terminix Companies*, *Inc. v. Dobson*, 513 U.S. 265, 272-75, 277-81 (1995). As the Supreme Court subsequently explained, the FAA's broad reach includes employment agreements (with narrow exceptions not relevant here). *See Circuit City Stores*, *Inc. v. Adams*, 532 U.S. 105 (2001); *accord Adkins v. Labor Ready*, *Inc.*, 303 F.3d 496, 505-06 (4th Cir. 2002). Lorenzo cannot and does not dispute that Prime engages in interstate commerce by providing wireless communications devices and services.

Thus, the issues on which Prime's arbitration appeal centers are (1) whether Lorenzo and Prime had a written agreement to arbitrate, and (2) whether Lorenzo's

claims are within the scope of those agreements.  Both criteria were met here, and the district court was therefore required to compel arbitration.[3]

## A.    Lorenzo And Prime Entered Into A Valid Arbitration Agreement.

Under the FAA, Lorenzo's arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  As the Supreme Court has explained, "[t]he overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011).  Thus, Section 2 of the FAA embodies a "liberal federal policy favoring arbitration agreements." *Id.* at 1749 (internal quotation marks omitted); *accord Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984).  Accordingly, any doubts must be resolved in favor of arbitration as a matter of federal law under the FAA.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

Under the FAA, disputes over the formation of an arbitration agreement between the parties are determined by reference to state contract law.  *See Wood*, 429 F.3d at 87.  There is no dispute here that North Carolina provides the relevant

---

[3] Section 3 of the FAA requires a court to "stay any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing."  9 U.S.C. § 3.  As this Court has emphasized, the FAA's "stay-of-litigation provision is mandatory," and a district court "therefore has no choice but to grant a motion to compel arbitration where a valid agreement exists and the issues in a case fall within its purview."  *Adkins*, 303 F.3d at 500.

law on contract formation. Courts applying North Carolina law have held that arbitration provisions in employee handbooks are mutually binding and enforceable agreements, whether or not the employee handbook is itself a contract of employment. *See, e.g.*, *Moye v. Duke University Health System, Inc.*, 2007 WL 1652542, at *5 (M.D.N.C. 2007); *Martin v. Vance*, 133 N.C. App. 116, 122, 514 S.E.2d 306, 310 (1999).

Here, Prime and all of its employees, including Lorenzo, agreed that all employment-related disputes—with a handful of exceptions not relevant here—would be determined through binding arbitration. (JA 437-38) Prime advised Lorenzo—along with its other employees—of the arbitration provisions, and Lorenzo—like other employees—acknowledged receipt of these provisions by executing an acknowledgment page agreeing to all of the terms of the Employee Handbook. (JA 673 and 684-86) Indeed, Prime submitted to the district court Lorenzo's signed acknowledgement showing her affirmative assent to the provisions of Prime's Employee Handbook—a handbook that included an arbitration provision in the section captioned "Conflict/Dispute Resolution." (JA 437, 662-63 and 673)

Despite this uncontradicted evidence, the district court held that Lorenzo had not agreed to arbitration because the signed acknowledgement page indicated that the Employee Handbook *as a whole* does not create a binding contract of

21

employment.  (JA 717 and 785)  But the district court reached the wrong result because it was asking the wrong question.  As the Supreme Court has repeatedly explained, under the FAA, "an arbitration provision is severable from the remainder of the contract."  *Buckeye Check Cashing*, *Inc. v. Cardegna*, 546 U.S. 440, 445 (2006); *accord Nitro-Lift Techs.*, *L.L.C. v. Howard*, 133 S. Ct. 500, 503 (2012) (per curiam); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967).

The district court therefore was required to examine whether Lorenzo's signed acknowledgment and agreement to the terms of the Employee Handbook containing the arbitration provision itself amounted to a binding agreement.  Had the district court done so, it would have reached the opposite result under the express language of both the Employee Handbook and the Dispute/Conflicts Resolution Program.  The handbook states that an employee "agrees to all provisions of the Dispute/Conflicts Resolutions Program" as a condition of continued employment with Prime. (JA 437)  The Dispute/Conflicts Resolutions Program expressly states that it is "contractual in nature," (JA 479) and provides that the employer and employee have "mutually consented to the resolution by arbitration of all claims and controversies." (JA 474)

Moreover, the district court's conclusion that the parties had not entered into a binding arbitration agreement ignores authority holding that arbitration

provisions contained in employee handbooks are fully enforceable and binding agreements to arbitrate under the FAA. Because employees are often hired on an at-will basis, employee handbooks typically stop short of creating a formal and binding contract of employment. *See*, *e.g.*, *MCI Telecommunications Corp. v. Wanzer*, 897 F.2d 703, 706-07 (4th Cir. 1990); *Walker v Westinghouse Elec. Corp.*, 77 N.C. App. 253, 259, 335 S.E.2d 79, 84 (1985). But regardless of whether an employee handbook as a whole constitutes an employment contract, courts applying North Carolina law—like courts elsewhere—have held that an arbitration agreement contained within those handbooks is valid and binding. *See Moye v. Duke University Health System*, *Inc.*, 2007 WL 1652542, at *5 (M.D.N.C. 2007) (signed acknowledgement of receipt of employee handbook is evidence of, and agreement to abide by, policies in this handbook, including an arbitration provision); *Martin v. Vance*, 133 N.C. App. 116, 514 S.E.2d 306 (1999) (dispute resolution procedure referenced in employee handbook was enforceable, as both employer and employee agreed to arbitrate); *see also Johnson v Travelers Property Cas. Corp.*, 56 F. Supp. 2d 1025, 1027 (N.D. Ill. 1999) (signed acknowledgment of employee handbook, which stated that handbook did not form a contract, was still enforceable with respect to the arbitration provision contained within the handbook).

Indeed, in *Martin v. Vance*, the North Carolina Court of Appeals cited with approval numerous decisions in which courts have "held the plaintiff was bound by an arbitration agreement which was proffered by an employer, prospective employer, or a regulating body *and which was not part of a formal employment contract*." 514 S.E.2d at 310-11 (emphasis added) (citing, *inter alia*, *Johnson v. Circuit City Stores*, 148 F.3d 373 (4th Cir. 1998) and *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272 (4th Cir. 1997)).

It is also clear under federal and North Carolina law that Lorenzo's agreement to arbitrate was supported by adequate consideration. As this Court has held, "a mutual promise to arbitrate constitutes sufficient consideration for the arbitration agreement." *Johnson*, 148 F.3d at 378 (quoting *O'Neil*, 115 F.3d at 275) (alterations omitted). North Carolina's Court of Appeals has similarly held that a mutual promise by both an employer and employee to relinquish their rights to pursue disputes in court is "new and sufficient consideration to support the [arbitration] agreement." *Howard v. Oakwood Homes Corp.*, 134 N.C. App. 116, 121, 516 S.E.2d 879, 882 (1999) (continued employment with knowledge of arbitration provision was sufficient consideration); *see also Hightower v. GMRI, Inc.*, 272 F.3d 239, 243 (4th Cir. 2001) (continued employment after being informed of arbitration program was sufficient to show agreement to arbitrate under North Carolina law). That standard was easily satisfied here. The

24

Dispute/Conflicts Resolution Program provides that Prime and its employees "have mutually consented to the resolution by arbitration of all claims or controversies . . . arising out of . . . employment" (JA 474) and that the program is "contractual in nature and enforceable by either party." (JA 479) Prime and Lorenzo both agreed to arbitrate any employment-related disputes pursuant to the procedures set forth in the Employee Handbook and Dispute/Conflicts Resolution Program, and "no consideration above and beyond the agreement to be bound by the arbitration process was required." *Johnson*, 148 F.3d at 378.

For these reasons, the district court's insistence that an arbitration provision located in an employee handbook cannot be enforceable unless the handbook was itself a formal employment contract is wrong as a matter of law. The district court's order can and should be reversed on that basis alone.

**B.    Lorenzo's And The Class Members' Claims Are Within The Scope Of Their Arbitration Agreements.**

Because it erroneously concluded that Lorenzo had not entered into an arbitration agreement, the court below never ruled on whether Lorenzo's claims fell within the scope of that agreement. This Court could, in its discretion, remand for the district court to consider that argument in the first instance. But in the interest of judicial economy and in accordance with "Congress's clear intent, in the [FAA], to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible," *Moses H. Cone*, 460 U.S. at 22, this Court

should conserve time and resources—both for the district court and the parties—by addressing the simple and straightforward scope issue as well. *See*, *e.g.*, *Daisy Mfg. Co. v. NCR Corp.*, 29 F.3d 389, 395 (8th Cir. 1994)(after reversing the district court in holding that party was bound by arbitration agreement, ruling in the first instance on the scope issue and compelling arbitration). Indeed, the Supreme Court approved of this practice in *Moses H. Cone*, where it "held that the court of appeals had acted within its discretion in deciding that the arbitration provision covered the claims involved, even though the district court had not decided those issues because it held the parties had not agreed to arbitrate." *Id.*, 29 F.3d at 395 (citing *Moses H. Cone*, 460 U.S. at 29).

There is no reason to delay in ruling on the scope issue here, because it is easily resolved in Prime's favor. The arbitration agreement between Lorenzo (and every other employee) and Prime covers all claims that any employee "might have arising from [her] employment" with Prime. (JA 438) As this Court has recognized, this type of language represents a "broad arbitration clause[]" that is "capable of an expansive reach." *Am. Recovery Corp. v. Computerized Thermal Imaging*, *Inc.*, 96 F.3d 88, 93 (4th Cir. 1996). Accordingly, there can be no doubt that Lorenzo's FLSA and state-law wage claims "arise from" her employment with Prime. Indeed, the arbitration provision expressly states that it covers claims brought under the FLSA and state wage-and-hour statutes. (JA 438)

26

Moreover, no grounds "exist at law or in equity for the revocation of" (9 U.S.C. § 2) Lorenzo's arbitration agreement. Any contention, for instance, that Lorenzo's arbitration agreement is unenforceable because it requires individual arbitration instead of a class action is foreclosed by Supreme Court precedent. In *Concepcion*, the Supreme Court held that the FAA preempts state law "[r]equiring the availability of classwide arbitration" because such a requirement "interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." 131 S. Ct. at 1748. The Court added that "States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." *Id.* at 1753. Since *Concepcion*, the Court also has held that the FAA also requires enforcement of agreements to arbitrate federal statutory claims on an individual basis, absent a "contrary congressional command." *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309-12 (2013); *CompuCredit Credit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012).

There is no such contrary congressional command here. Indeed, this Court has confirmed that FLSA claims are arbitrable. *See Adkins*, 303 F.3d at 506; *see also Sutherland v. Ernst & Young*, *LLP*, 726 F.3d 290, 296-87 (2d Cir. 2013) ("[T]he FLSA does not include a 'contrary congressional command' that prevents the underlying arbitration agreement from being enforced by its terms").

Finally, even if there was any doubt over whether the arbitration provisions at issue cover Lorenzo's claims against Prime—and there is none—those doubts must be resolved in favor of arbitration. The Supreme Court has made clear that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" when "the problem at hand is the construction of the contract language itself." *Moses H. Cone*, 460 U.S. at 24-25; *accord*, *e.g.*, *Dockser v. Schwartzberg*, 433 F.3d 421, 425 (4th Cir. 2006). Accordingly, Plaintiff's claims are fully arbitrable.

Because Lorenzo, the named plaintiff, is obligated to arbitrate her claims on an individual basis, the district court's order certifying a Rule 23 class as well as the order authorizing a collective FLSA action to proceed must be reversed. The fact that Lorenzo agreed to resolve her disputes by arbitration on an individual basis instead of by lawsuits in court—much less class or collective actions in court—makes clear that she cannot serve as a named class or collective action plaintiff. Moreover, as explained below, reversal of the district court's class certification order is independently warranted for several reasons.

## III.  THE DISTRICT COURT'S CERTIFICATION OF A RULE 23 CLASS WAS LEGALLY FLAWED

The class action device is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979). To meet this exception, a party must do

more than merely allege compliance with Rule 23's requirements; instead, she "must affirmatively demonstrate [her] compliance with Rule 23." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *accord Wal-Mart Stores*, *Inc. v. Dukes*, 131 S. Ct. 2541, 2551 ("Rule 23 does not set forth a mere pleading standard").

In particular, a plaintiff has the burden of showing that the proposed class satisfies the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—as well as to demonstrate that the class "fall[s] within one of the three categories enumerated in Rule 23(b)." *Gunnells v. Healthplan Servs.*, *Inc.*, 348 F.3d 417, 423 (4th Cir. 2003). Here, Lorenzo sought certification under Rule 23(b)(3), which is only "appropriate when all of the prerequisites of Rule 23(a) are satisfied and two other requirements are met. Specifically, (1) common questions of law or fact must predominate over any questions affecting only individual class members; and (2) proceeding as a class must be superior to other available methods of litigation." *EQT Prod.*, 2014 WL 4070457 at *5.

Moreover, although it is a plaintiff's burden to demonstrate compliance with Rule 23, "the district court has an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites have been satisfied." *Id.* at *6 (quoting *Wal-Mart*, 131 S. Ct. at 2551). *See also Comcast*, 133 S. Ct. at 1432-33; *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848-49 (1999); *Amchem Prods.*, *Inc. v.*

29

*Windsor*, 521 U.S. 591, 622-23 (1997); *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160-61 (1982).

Reversal is warranted here because the district court failed to perform the rigorous analysis required under Rule 23. First, Lorenzo's claims satisfy neither the typicality nor commonality requirements of Rule 23. Second, in concluding that there were common issues of law with respect to the class, the district court improperly accepted Lorenzo's conclusory assertion that Prime's chargeback policy would violate state law across the board—*i.e.*, as to all putative class members—even though there was no legal basis for that conclusion. Third, even if there are some common issues among the class members, the class does not satisfy Rule 23(b)(3)'s predominance requirement because numerous individualized issues dwarf any common ones.

## A. Lorenzo's Claims Are Not Typical Of The Class Nor Do They Present Common Questions Of Law Or Fact.

Lorenzo failed to demonstrate that her claims are typical or common of those of the class. The only evidence Lorenzo presented was an affidavit listing four specific transactions she made as a store manager for which she claims no commission was received. (JA 260) She presented no evidence on why those alleged problems with her individual commissions were somehow a class-wide concern. Lorenzo's other alleged wrong was that upon being promoted to store manager, her commissions were based, at least in part, on a prior manager's

returns.  (JA 239)  This concern also was related to specific commissions earned by Lorenzo as a manager, not about payments of commissions to the class of managers and Solution Specialists as a whole.

When Lorenzo's claims were tested in her deposition, her testimony revealed that she clearly understood the commission advance policy.  (JA 231)  Lorenzo agreed that if AT&T made a deduction from commissions paid to Prime, Prime could make a corresponding deduction to the advances given to her.  (JA 251)  Thus, it became clear that her complaints about the chargeback policy did not pertain to the existence of the policy in general, but instead were based solely on her belief that there are particular transactions and sales for which the policy was improperly applied to her and for which she did not receive appropriate compensation.  (JA 257-58 and 260)  Lorenzo testified at length about a manager's meeting during which she raised multiple complaints about her own personal commissions, but admitted that no other managers raised similar concerns,  (JA 245-47), confirming that her concerns were individual in nature and not common to all employees.

The commonality prerequisite for maintaining a class action is not met because Lorenzo's complaints are particular to her employment as a store manager. In other words, Lorenzo merely alleges that certain commissions *of hers* were improperly deducted.  (JA 260)  These disputed commissions are personal to

Lorenzo; even if her allegations had merit, they do not involve any common questions about Prime's overall policies. *See Grandalski v. Quest Diagnostics, Inc.*, 2014 WL 4455034 at *8 (4th Cir., Sept. 11 2014) (district court properly denied class certification when validity of claims turned on "specific evidence" regarding individual billing of each class member, because such evidence is "incompatible with representative litigation"); *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998); *Lienhart*, 255 F.3d at 148.

Accordingly, had the district court performed the rigorous analysis of Lorenzo's claims that Rule 23 requires, it would have determined that she is not complaining about an overall policy of Prime's, but rather about the application of that policy to her own situation. Lorenzo may nonetheless attempt to defend the district court's decision by arguing that the alleged validity of the policy is itself a common question sufficient to support class certification. To be sure, "at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality. What we are looking for is a common issue the resolution of which will advance the litigation." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir.1998), *cert. denied*, 524 U.S. 923 (1998); *see also Wal-Mart*, 131 S. Ct. at 2552 ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.")(internal

32

quotation marks omitted; alteration in original). But given that Lorenzo's claims—as the evidence before the district court reveals—are in truth about the application of the chargeback policy to her particular circumstances rather than about the validity of the policy in general, the lawsuit presents no common issues that would "advance" the litigation. On the contrary, Lorenzo's claims require an employee-by-employee and transaction-by-transaction analysis to determine whether any transactions were, in fact, improperly refunded. In all events, whether or how an individual employee was affected by Prime's chargeback policy is a highly individualized inquiry not amenable to class-wide resolution. One employee could have had no chargebacks apply to his or her commission advances, while another employee might have multiple chargebacks. The district court's class certification order ignored entirely these crucial individualized issues.

The lack of commonality here is similar to *Crosby v. City of Gastonia*, 2008 WL 1944399 (W.D.N.C. 2008),[4] in which the plaintiff alleged a breach of contract with the defendant, but could not prove that a breach occurred with all other class members, even though they had the same or similar contracts. As the *Crosby* court noted, "[m]erely because . . . the class representative, can prove that he has a claim against the defendant does not mean that every other member of the class would

---

[4] *Crosby* was ultimately determined in favor of the employer, but on grounds not relevant to the discussion here. 682 F. Supp. 2d 537 (W.D.N.C. 2008), *aff'd*, 635 F.3d 634 (4th Cir. 2011).

have a valid claim." *Id.* at *4. Even if Lorenzo were ultimately able to prove in this case that some of her transactions were improperly deducted, she cannot prove that similar mistakes occurred for all employees of Prime in North Carolina. Therefore, the typicality and commonality prerequisites were not met here, and the district court erred in assuming that Lorenzo's personal allegations would be germane to the claims of other employees.

### B.   The District Court's Commonality Analysis Failed To Address The Disputed Legality Of Prime's Chargeback Policy.

Lorenzo attempts to avoid the individualized nature of her dispute by baldly asserting, without a shred of evidence, that Prime intentionally omitted sales from employees' gross profit in order to reduce commissions. The magistrate judge—and the district court in turn—erred by accepting these allegations as true without any supporting evidence or analysis. The magistrate judge simply concluded that "Plaintiff's allegations are not based on conduct unique to her," without even a preliminary consideration of whether there was any legal basis for Lorenzo's supposed disagreement with Prime's chargeback policy. (JA 561) That unquestioning acceptance of Lorenzo's assertions is contrary to Supreme Court precedent explaining that courts must resolve disputes on the merits when necessary to assessing whether Rule 23's requirements have been met.

As this Court has long recognized, "an intelligent decision on class certification requires at least a preliminary exploration of the merits of the

plaintiff's claim." *Shelton v. Pargo*, *Inc*., 582 F.2d 1298, 1312 (4th Cir. 1978).  A court may not confine itself to the allegations of the complaint when ruling upon the issue of class certification.  *Id.*  Further, in recent years, the Supreme Court has repeatedly instructed courts to "probe behind the pleadings" when (as here) disputed merits issues are relevant to the class certification inquiry.  *Comcast*, 133 S. Ct. at 1432; *accord Wal-Mart*, 131 S. Ct. at 2551-52.

Under these precedents, the district court erred by refusing to consider at the class certification stage whether Lorenzo's allegations about Prime's chargeback policy had any legal basis.  Here, the undisputed evidence of record demonstrates that Prime merely passes along commissions, bonuses and refunds as they are paid or deducted by AT&T and other vendors. (JA 305, 468 and 674)  As explained above, Lorenzo's examples of allegedly misappropriated or improper refunds of advanced commissions that she believes occurred during her employment, even if true, are personal to her and not a system-wide practice that affects all employees; certainly Lorenzo introduced no evidence to support such a claim.

A close look at the limited transactions about which Lorenzo complained shows that she simply did not understand how commissions were determined and refunds of advanced commissions were applied.  (JA 471-473)  The commission structure used by Prime is not an unlawful deduction of wages earned by the employee, but is instead a lawful charge against an advance of a commission

previously made to the employee for the employee's benefit.  The advance is made so that an employee would not have to wait for the 180-day deactivation period to expire to receive their commission or bonus.  As one California court explained, "Without a chargeback policy, the … sales representatives would have to wait up to a year to earn their commissions."  *Deleon v. Verizon Wireless*, *LLP*, 207 Cal. App. 4th 800, 818, 143 Cal. Rptr. 3d 810 (2012).

This kind of chargeback policy is a valid and reasonable policy that is typical in the cell phone industry.  (JA 450)  In nonetheless concluding that a class could be certified, the district court assumed the validity of Lorenzo's allegation that Prime's overall policy of making deductions from advances is improper under state wage and hour laws.  Yet Lorenzo's argument has been propounded in other similar suits and rejected by every court that has considered similar claims. Indeed, numerous courts have upheld policies just like Prime's against FLSA and state wage-and-hour challenges.

In *Deleon v. Verizon Wireless*, *LLP*, 207 Cal. App. 4th 800, 143 Cal. Rptr. 3d 810 (2012), the plaintiff was employed as a retail sales representative by Verizon Wireless, which had a commission advance chargeback plan that allowed for commission advances to be charged back against the employees commissions for up to 365 days after the commissions were advanced.  The plaintiff sought class certification and complained that the commission advance plan violated the

California Labor Code. The California Court of Appeals upheld summary judgment granted in favor of the employer and found there was no wrongful withholdings made from an employee's wages. *Id*. at 812. Similar to the Prime policy, the *Deleon* written compensation plan states that commissions were not earned unless a customer did not cancel service within a determined timeframe and that any payments made were advances. *Id*. at 812. In analyzing the structure and composition of the chargeback policy, the court in *Deleon* noted, "[w]hile commission payments were made in advance, commissions were earned only if the customer did not cancel the cell phone service plan before the expiration of the chargeback period. This policy does not underpay 'wages.' Rather, when a chargeback occurs, the retail sales representative receives a reduced amount of the next advance to account for the earlier advance that never became a commissionable sale." *Id.* at 810.

This process is equivalent to the commission plan utilized by Prime. (JA 454-55). Just as in *Deleon*, commissions and/or bonuses are generally paid prior to any cancellation made by the customer on the service; therefore, a refund occurs later. Since the chargeback policy does not affect the base pay of the employee, is paid separately from wages, and is only earned once the 180-day chargeback

period has expired, the commission advance and chargeback policy implemented by Prime is valid and reasonable.[5]

Moreover, other courts have upheld similar chargeback policies.  *See*, *e.g.*, *Steinhebel v. Los Angeles Times Communications*, *LLC*, 126 Cal. App. 4th 696, 705, 24 Cal. Rptr. 3d 351, 357 (2005) ("The essence of an advance is that at the time of payment the employer cannot determine whether the commission will eventually be earned because a condition to the employee's right to the commission has yet to occur or its occurrence as yet is otherwise unascertainable."); *Koehl v. Verio*, *Inc.*, 142 Cal. App. 4th 1313, 48 Cal. Rptr. 3d 749 (2006)(upholding a chargeback provision and concluding that commission advances are not wages).

The legality of this commission structure was also demonstrated by *Morangelli v. Chemed Corp.*, 922 F. Supp. 2d 278 (E.D.N.Y. 2013), which analyzed a similar provision of commission deductions as part of a FLSA collective action and state-law wage-and-hour class action, including under North Carolina law.  In *Morangelli*, a class of plumbing technicians employed by Roto-Rooter branches brought a multitude of claims against their employer, claiming

---

[5]    Additionally, Lorenzo was aware of the chargeback policy prior to her employment, as indicated by her signed acknowledgement page.  (JA 674)  While the only copy of the signed page is of poor quality and shows only Plaintiff's signature clearly, a legible version of the same document (executed by another Prime employee) is contained in the record.  (JA 317)

violations of both federal law and the law of fourteen states, including North Carolina. *Id.* at 316 n.3. Roto-Rooter technicians would earn commission for services performed, but if warranty service needed to be performed within 6 months of the date of the original service, the commission paid to the technician would be deducted from the technician's pay. The plaintiffs alleged that this compensation system violated state law prohibitions on wage deductions, while the employer contended that commissions were advances and not earned wages and that the deductions were proper and agreed to by the technicians. The court found that the commissions were advances and not earned wages and that only deductions from earned wages were actionable, thereby granting summary judgment in favor of the employer. *Id.* at 297. This same analysis would apply to Prime and its commission structure. The structure clearly is an advance of commission and thus Lorenzo's arguments are flawed and there is no valid state wage and hour claim.

The Amended Complaint alleges only a generalized violation of the NCWHA by a "failure to pay wages" and a diversion of earned commissions. In her motion to certify a class, Lorenzo stated that Prime's commission structure violated N.C. Gen. Stat. § 95-25.6 by failing to pay wages when due and N.C. Gen. Stat. §§ 95-25.8 and .13 by failing to obtain written authorization and advance

39

written notice of intent to make wage deductions.[6] (JA 225)  Lorenzo does not provide any specific allegation explaining how Prime failed to comply with these statutes.  The district court failed to make even the most cursory analysis of whether Prime's employment policies did in fact violate these statutory provisions, including whether the commissions at issue were "wages" or instead advances, and instead relied upon the magistrate's recommendation and concluded that Lorenzo had shown that Prime's alleged acts "could violate provisions of the NCWHA." (JA 709)  The magistrate's recommendation, however, only recited Lorenzo's bald allegations without any further consideration.

In short, the district court was not permitted to defer to a later date any examination of the merits of the supposedly "common" issues raised by Lorenzo's cursory allegations about Prime's chargeback policy.  By refusing to "probe behind the pleadings before coming to rest on the certification question," *Comcast*, 133 S. Ct. at 1432, and instead simply assuming that Lorenzo's unsupported allegations presented common issues of law, the district court failed to engage in the rigorous analysis Rule 23 requires and its order certifying a class must be reversed for that reason as well.

---

[6] N.C. Gen. Stat. § 95-25.6 clearly does not apply here, as it states wages based on commissions may be paid as infrequently as annually if prescribed in advance, and no complaint about the timing of payment of commissions has been raised.  N.C. Gen. Stat. § 95-25.8 states that wages can be withheld with advance written authorization, which clearly was obtained here (assuming the payments at issue were wages as opposed to advances).

40

## C.     The District Court's Predominance Analysis Was Legally Flawed.

The district court's certification analysis suffers from still other defects that independently warrant reversal.   Because Lorenzo failed to satisfy the commonality requirement of Rule 23(a)(2), she also necessarily failed to satisfy Rule 23(b)(3)'s "more demanding predominance requirement."  *EQT Prod.*, 2014 WL 4070457, at *13; *accord Comcast*, 133 S. Ct. at 1432.  But even if Lorenzo could satisfy commonality, the district court's predominance analysis was independently erroneous.   Rule 23(b)(3) requires "a close look" at whether common questions predominate over individual ones," *Comcast*, 133 S. Ct. at 1432, yet the district court barely even acknowledged the individualized inquiries necessary to resolve Lorenzo's claims, much less explained how any common questions would predominate over them.  The magistrate judge's three paragraph analysis asserted, without further explanation, that "Prime's chargeback policy affect[s] all of the putative class members."  (JA 562)  Since the overall policy of refunds of unearned commissions is utilized in the industry (JA 450) and has been uniformly upheld by the courts (*see* pp. 36-39, *supra*), the purportedly "common" issues regarding the legality of Prime's chargeback policy did not warrant class certification.   Even assuming arguendo that Prime's chargeback policy could possibly violate any provision of North Carolina's wage and hour act, the district

court erred by ignoring entirely the necessarily individualized inquiry of how that policy was applied in practice to each class member.

In focusing solely on Prime's alleged policies while ignoring Prime's actual practices, the district court overlooked the well-established principle that only actual deprivations of wages violate the law. Even if Lorenzo were to prove that the chargeback policy was inappropriately applied to some set of employees, the issues of "which transactions" and "how much" would still dominate the issues to be resolved in the case. Each individual transaction would have to be examined and independently scrutinized—an inquiry that would predominate over any common issues. For instance, Prime's employees were provided different goals and quotas to meet each month based upon their location or past sales history (*i.e.* employees working in high traffic, high sales stores were given larger goals to meet before earning a commission). Thus, whether a refund was inappropriately applied to any given employee and what damages resulted are both highly individualized inquiries.

If the mere existence of a company policy were automatically to establish predominance, as the district court essentially concluded here, Rule 23(b)(3) would not serve its fundamental purpose of separating cases where a class trial would save resources from those that instead would devolve into an unmanageable multitude of mini-trials. Scrutiny of an employer's policies "to the near exclusion

of other factors relevant to the predominance inquiry" cannot justify class certification. *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 959 (9th Cir. 2009). Indeed, this Court recently vacated an order granting class certification that similarly focused on a defendant's allegedly common policies without considering how those policies were applied on an individual-by-individual basis. *See EQT Prod.*, 2014 WL 4070457, at *14; *see also Scott v. Family Dollar Stores*, *Inc.*, 733 F.3d 105, 113 (4th Cir. 2013) (plaintiff seeking class certification must show that the allegedly unlawful practice affected the class in a uniform manner).

Moreover, before a Rule 23(b)(3) class may be certified, a plaintiff must demonstrate that damages are capable of being measured on a class-wide basis. *Comcast Corp.*, 133 S. Ct. at 1433 (explaining that where damages are not ascertainable on a class-wide basis, "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class"). The class here plainly failed to satisfy that requirement; indeed, the magistrate judge acknowledged that "adjudication of the claims against Prime may require an individualized assessment of damages" (JA 561) and that "some factual differences may exist among the punitive class members." (JA 562) Although *Comcast* had already been decided, neither the magistrate judge nor the district court made any effort to explain how Rule 23(b)(3) certification in this case could possibly be squared with

43

the Supreme Court's interpretation of Rule 23(b)(3) in *Comcast*. Indeed, it cannot be. For that reason alone, the district court's certification of a Rule 23 class must be reversed.

In sum, the district court failed to provide a rigorous analysis of the Rule 23 elements as required by the Supreme Court and this Court. The district court incorrectly concluded that the presence of purportedly common class issues about Prime's policies, stated only at the highest order of abstraction, could satisfy Rule 23's stringent standards for class certification. The district court repeatedly downplayed the individualized assessments that will be required as to both liability and damages—issues that substantially predominate over any common issues among the class members, and therefore improperly certified this matter as a class under Rule 23.

## CONCLUSION

For the foregoing reasons, Defendant-Appellee Prime Communications respectfully requests that this Court reverse the orders of the district court and remand with instructions to compel arbitration and stay the litigation.

## REQUEST FOR ORAL ARGUMENT

These consolidated appeals raise important issues regarding the formation and enforcement of valid and lawful arbitration agreements and the obligations of a district court to perform a rigorous analysis of a class certification under Federal

Rule of Civil Procedure 23. For these reasons, oral argument will enable the parties to address those issues in greater detail and respond to any question from the Court, and will comport with this Court's traditional practice in favor of oral arguments in all but the most exceptional cases.

This the 3rd day of October, 2014.

RAGSDALE LIGGETT PLLC

BY:  /s/ William W. Pollock
        William W. Pollock
        N.C. State Bar No.: 19381
        John B. Walker
        N.C. State Bar No.: 35631
        CrossPointe Plaza
        2840 Plaza Place, Suite 400
        Post Office Box 31507
        Raleigh, NC  27622-1507
        Email: bpollock@rl-law.com
        Email: bwalker@rl-law.com
        Telephone:  (919) 787-5200
        Facsimile:  (919) 783-8991

        Attorneys for Defendant-Appellant
        Prime Communications, L.P.

# <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*10,375*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>October 3, 2013</u>            <u>/s/ William W. Pollock</u>
                                                            *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 3rd day of October, 2014 I caused this Brief of Appellant and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

>Zev H. Antell
>Harris D. Butler
>BUTLER ROYALS, PLC
>140 Virginia Street, Suite 302
>Richmond, Virginia  23219
>(804) 648-4848

>Stephen A. Dunn
>EMANUEL & DUNN, PLLC
>130 South Salisbury Street
>Post Office Box 426
>Raleigh, North Carolina  27601
>(919) 832-0329

>*Counsel for Appellee*

I further certify that on this 3rd day of October, 2014, I caused the required copies of the Brief of Appellant and Joint Appendix to be hand filed with the Clerk of the Court.

/s/ William W. Pollock
*Counsel for Appellant*